# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

JOSE TREGO,

    Petitioner,

vs.                                 CIVIL ACTION NO.: CV514-059

TRACY JOHNS, Warden,

    Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Jose Trego ("Trego"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Response, and Trego filed a Traverse. For the reasons which follow, Trego's petition should be **DENIED**.

## STATEMENT OF THE CASE

Trego was suspected of being an organizer of a group demonstration/food strike after several inmates wanted to protest the quality of the recent holiday meal. Trego was placed in the Special Housing Unit for investigation of his involvement in this demonstration. After the investigation was completed, Trego was charged by incident report with encouraging a group demonstration, in violation of code 212 of the prison's disciplinary regulations. The incident report was forwarded to the Unit Disciplinary Committee ("UDC") for a hearing, and the UDC referred the matter to be heard by a Disciplinary Hearing Officer ("DHO"). The DHO recommended that Trego be

AO 72A
(Rev. 8/82)

sanctioned with, *inter alia*, disallowance of 27 days' good conduct time. (Doc. No. 8, pp. 2–5). The DHO forwarded her recommendation to a DHO oversight specialist in the Bureau of Prisons' ("BOP") management branch, who found that the recommended sanctions were appropriate and the hearing process complied with due process. (Doc. No. 8-2, p. 43).

In this petition, Trego contends that the due process requirements were not met and that the DHO was not authorized to take away any of his good conduct time. Respondent asserts that Trego's petition is without merit.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Due process requirements**

Trego alleges that "due process was not proper[ ]" because he "was not the original inmate sanctioned for the [charged] offense." (Doc. No. 1, p, 4). Respondent contends that Trego's due process rights were not violated because Trego was afforded all the requisite procedural protections during the administrative process and there was sufficient evidence to support the DHO's decision.

A prisoner has a protected liberty interest in statutory good time credits, and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him, (2) is given the opportunity to call witnesses and present documentary evidence, and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67).

Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985)). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith, 432 F. App'x at 845. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

Trego was charged by incident report dated January 24, 2013, with encouraging a group demonstration, a code 212 violation. Trego received a copy of this incident report on January 25, 2013. (Doc. No. 8-2, p. 27). On January 30, 2013, the inmate register number was changed to reflect Trego's inmate register number. Trego received this corrected incident report on January 30, 2013. (Doc. No. 8-1, pp. 5–6). The UDC conducted a hearing on the same day, at which Trego was present and gave a statement. The UDC referred the matter to a DHO for a hearing based on the severity

3

of the charge. (Doc. No. 8-2, p. 27). Trego was advised of his rights for the disciplinary hearing, including his right to have a staff member represent him during this hearing and to call witnesses and present documentary evidence, on January 30, 2013. (Id. at p. 39). Trego indicated that he did not wish to have a staff representative or to have witnesses. (Id.).

Trego's disciplinary hearing was conducted on February 6, 2013, at which time the DHO read and reviewed Trego's due process rights. (Id. at pp. 33, 35). DHO Jennifer Chockley found that Trego was guilty of the code 212 offense as charged based on the greater weight of the evidence. In so doing, DHO Chockley relied on the incident report and investigation, as well as the inmate investigative report, which was signed by the warden on January 24, 2013. (Id. at pp. 34–36). DHO Chockley noted that Trego admitted to being a representative of a group who participated in the strike and to participating in the strike "because [he] didn't want to make a bigger problem[.]" (Id. at p. 36). DHO Chockley delivered a copy of her findings to Trego on April 30, 2013. (Id. at p. 37).

Trego's disciplinary hearing was conducted on February 6, 2013, and he was notified of the charge against him on January 30, 2013, which was more than 24 hours prior to the hearing. Thus, the first Wolff factor was met. The second Wolff factor was met on January 30, 2013, when Trego was made aware of his right to call witnesses and to present documentary evidence. The third Wolff factor was met when Trego received written notice of DHO Chockley's decision on April 30, 2013. In addition, a review of DHO Chockley's findings reveals that there is "some evidence" to support her finding that Trego committed the code 212 violation. DHO Chockley made her findings

4

based on Trego's statements during the hearing, as well as the documentary evidence before her. Accordingly, Trego received all of the due process protections afforded him during the disciplinary proceedings, and his contentions to the contrary are without merit.

To the extent Trego's contention that he was not the original inmate sanctioned for the charged offense resulted in improper due process, this contention fails. The undersigned presumes Trego bases this contention on the fact that another inmate's register number was listed on the incident report with his name. However, the inmate register number was corrected to indicate Trego's register number before his disciplinary hearing, and Trego received the corrected report more than 24 hours prior to his disciplinary hearing. There is nothing before the Court indicating that this corrected error affected Trego's due process rights, as outlined above, in any way.

## II. Whether the DHO was authorized to impose sanctions

Trego asserts that the DHO is not authorized by federal law to take away his good conduct time because he is housed in a private facility which is owned by the GEO Group and which contracted with the Bureau of Prisons ("BOP").

Respondent contends that this Court's precedent rejects Trego's position. Respondent alleges that the BOP does not delegate its decision-making authority improperly if it retains the right to review disciplinary actions contract staff take. Respondent also alleges that DHO Chockley submitted her recommended sanctions to the BOP for review and certification.

The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. §

4042(a)(3). The BOP's authority in this area may include contracting out the care of prisoners to private facilities. 18 U.S.C. § 4013(a)(3). The relationship between the federal government and facilities which house federal inmates pursuant to contract has been described as follows:

> Even though the federal government may enter into contracts with a local agency for imprisonment of federal prisoners, 'no federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein.'. . . . 18 U.S.C. § 4001(b)(1), [provides] that '[t]he control and management of Federal penal and correctional institutions . . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws. Therefore, when the Attorney General is not permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that facility exists, the facility cannot properly be categorized as a [f]ederal prison."

United States v. Cardona, 266 F. Supp. 2d 558, 560 (W.D. Tex. 2003) (internal citations omitted).

It appears that the BOP has no direct or constructive control over managerial functions at D. Ray James Correctional Facility, and the Court agrees that D. Ray James Correctional Facility is not a "federal" prison. However, it must be determined whether D. Ray James Correctional Facility, as a non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP. "It is well-established that federal agencies may not delegate their statutory authorities to private parties. However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'" Carabollo-Rodriguez v. Pugh, CV304-081 (S.D. Ga. June 13, 2005) (citing Ocean Conservancy v. Evans, 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003)).

6

Here, the BOP is charged with making a final determination as to whether disciplinary proceedings are proper. Because the BOP has retained final decision-making authority in the imposition of disciplinary sanctions, it has not unlawfully delegated its authority to D. Ray James Correctional Facility staff. See 28 C.F.R. Part 541 (federal regulations pertaining to inmate discipline); see also, Program Statement 5720.09 (stating that it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment). In fact, DHO Chockley submitted her findings and recommended sanctions to a DHO oversight specialist with the BOP's privatization management branch for review. Daniel McCarthy informed DHO Chockley that the DHO report was reviewed and found to be in compliance with due process requirements, and that the recommended sanctions were in accord with Program Statement 5270.09. (Doc. No. 8-2, p. 43). Trego is not entitled to his requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Trego's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 7th day of November, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

7